J-S39001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: G.S., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1452 EDA 2025 |

Appeal from the Order Entered May 9, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No: CP-64-DP-0000024-2023

| | | |
|---|---|---|
| IN THE INTEREST OF: G.S., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1453 EDA 2025 |

Appeal from the Decree Entered May 8, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No: CP-64-AD-0000007-2025

| | | |
|---|---|---|
| IN THE INTEREST OF: D.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1489 EDA 2025 |

Appeal from the Order Entered May 9, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No: CP-64-DP-0000025-2023

J-S39001-25

| | | |
|---|---|---|
| IN THE INTEREST OF: D.L.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.F., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1490 EDA 2025 |

Appeal from the Decree Entered May 8, 2025
In the Court of Common Pleas of Wayne County
Civil Division at No:  CP-64-AD-0000008-2025

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED FEBRUARY 13, 2026**

M.F. ("Appellant")[1] appeals from the May 8, 2025 decrees which involuntarily terminated his parental rights to his natural son, G.S., Jr., born in May 2012, and daughter, D.F. a/k/a D.L.F., born in November 2013 (collectively, "the Children").[2]  Appellant also appeals from the May 9, 2025 orders that changed the Children's permanency placement goals from reunification to adoption.  Upon careful review, we reverse the termination decrees and affirm the goal change orders.

_____

[1] Appellant, who is transgender, is the biological mother of the Children.  In this memorandum we refer to Appellant by the pronouns "he/him" as utilized in the subject proceeding.

[2] On May 8, 2025, the court entered separate decrees which granted the request of G.S. ("Father") (collectively with Appellant, "Parents") to voluntarily relinquish his parental rights to the Children.  Father did not appeal or participate in the instant appeal.

- 2 -

The certified record reveals the following facts and procedural history. Appellant has not cared for the Children since they were approximately one-and-a-half years and four months old, respectively. *See* N.T., 5/6/25, at 13, 96. At that time, due to Parents' inability to care for the Children, maternal grandmother was awarded primary physical custody and shared legal custody.[3] *See id.* at 12-13; *see also* Order of Adjudication, 10/3/23, at 1.

In January 2023, Wayne County Children and Youth Services ("CYS") received a report alleging that maternal grandmother failed to properly supervise the Children. *See* N.T., 5/6/25, at 12-13. The Children remained in maternal grandmother's home and CYS implemented services. *See id.*

In September 2023, maternal grandmother's health began to deteriorate, which required her admission to the hospital for three weeks. *See id.* at 12. CYS assessed Appellant as a placement resource but determined that he could not safely care for the Children because he had not cared for them since they were babies, and he had previously been indicated for medical neglect.[4] *See id.* In addition, Appellant resided in the State of Maine, his

---

[3] The certified record does not reveal what, if any, physical custody Appellant was awarded. *See* Order of Adjudication, 10/3/23, at 1.

[4] The certified record does not provide details regarding the indicated report of medical neglect, but we discern it involved a different child not a subject of the instant appeals.

permanent residence for five years at the time of the Children's placement. *See id.* at 97.

On September 19, 2023, CYS filed dependency petitions regarding the Children. *See id.* at 12-13. Following a hearing on October 3, 2023, which Appellant attended via video conference, the court adjudicated the Children dependent and removed them from the custody of maternal grandmother.

The court established the Children's permanency placement goals as reunification with concurrent goals of adoption. According to Stephanie Bryant, CYS assistant director who worked with the family throughout these proceedings, Appellant's service plan goals in furtherance thereof included the following: (1) cooperate with CYS; (2) attend a parental fitness evaluation and follow any recommendations; (3) address his mental health needs; (4) prepare for the return of the Children; (5) maintain a safe and stable home; and (6) attend visitation with the Children. *See* N.T., 5/6/25, at 26; *see also* Order of Adjudication, 10/3/23, at 3.

The court held permanency review hearings at regular intervals.[5] While routinely determining Appellant's compliance with the permanency plan as "moderate," the court consistently rated Appellant's progress toward alleviating the circumstances that brought the Children into placement as "minimal." N.T., 5/6/25, at 26.

---

[5] The hearings occurred on February 27, 2024, April 30, 2024, July 23, 2024, November 26, 2024, April 8, 2025, and May 6, 2025.

Appellant failed to meaningfully address or comply with his court-ordered goals. Primarily, Appellant failed to demonstrate that he could appropriately parent the Children, and he never progressed beyond supervised visitation. He regularly attended visits CYS offered. *See id.* at 16, 30. Except for two in-person visits, these visitations occurred via videoconferencing. Doreen Felczuk, Justice Works visit coach, indicated that Appellant largely made no progress and required frequent assistance and redirection. *See id.* at 49-51, 72.

Further, Appellant completed a parental fitness evaluation in January 2024, to assess his parenting capacity and mental acuity. Following the evaluation, it was recommended that he attend mental health counseling. *See id.* at 38. However, Appellant did not engage in counseling until the end of the summer of 2024. *See id.* at 39. Moreover, CYS was unable to obtain releases from Appellant's therapist, Karen Klein, Ph.D. *See id.* at 39-40. Therefore, CYS had no knowledge regarding the frequency of Appellant's sessions or if he was making any progress. *See id.* at 39-41.

On February 18, 2025, CYS filed petitions requesting that the juvenile court change the Children's permanency placement goals to adoption. Thereafter, on March 18, 2025, CYS filed separate petitions to involuntarily terminate Appellant's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5), (8), and (b).

A consolidated evidentiary hearing with respect to the goal change and involuntary termination petitions occurred on May 6, 2025, during which CYS presented the testimony of Ms. Bryant and Ms. Felczuk. Appellant testified on his own behalf. The Children's legal and best interests were represented by their guardian *ad litem* ("GAL"), Lindsey Collins, Esquire.[6]

Ms. Bryant testified that, at the outset of the case, the Children displayed various behavioral concerns including an inability to regulate their emotions and "sexually acting out." N.T., 5/6/25, at 23. The Children have been diagnosed with autism, and D.F. has also been diagnosed with attention deficit hyperactivity disorder ("ADHD") and post-traumatic stress disorder ("PTSD"). ***See id.*** at 19-20. Ms. Bryant further testified that D.F. is now excelling in school, attends counseling, and is provided medication

_____

[6] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with" 23 Pa.C.S.A. § 2313(a). ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020). Further, if the GAL is appointed to the dual role of representing a child's best and legal interests, "appellate courts should review *sua sponte* whether the orphans' court made a determination" that the child's legal interests and best interests "did not conflict." ***Id.***

In this case, a review of the Children's adoption dockets reveals that the orphans' court appointed their GAL to the dual role of representing the Children's best and legal interests on March 18, 2025. In so doing, the court determined that "there is no conflict of interest between the [Children's] best interest . . . and the [Children's] legal interests[.]" ***See*** Orphans' Court Docket Entries. Therefore, we find the orphans' court properly appointed the GAL to represent the Children's dual interests pursuant to ***K.M.G.*** and Section 2313(a).

management through her physicians. ***See id.*** She further informed the court that G.S., Jr., is doing well in school and is receiving counseling. ***See id.*** at 21. Finally, Ms. Bryant stated that D.F. was recently placed in a pre-adoptive foster home, and G.S., Jr., had a meet-and-greet with a separate pre-adoptive placement that went very well. ***See id.*** at 32-33.

On May 8, 2025, the court entered the subject involuntary termination decrees on the Children's adoption dockets. The court entered the subject dependency orders on May 9, 2025, on the Children's juvenile dockets, which changed the Children's primary goals from reunification to adoption with concurrent goals of permanent legal custody ("PLC").[7]

Appellant timely filed separate notices of appeal from the decrees and goal change orders, along with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court consolidated the appeals *sua sponte* on July 2, 2025. On June 30, 2025, the court filed its Rule 1925(a) opinion.

On appeal, Appellant presents the following issues for review:

I. Whether the trial court committed an error of law and/or an abuse of discretion by finding that termination of [Appellant's] parental rights was warranted pursuant to Section 2511(a)(5) and (8)?

_____

[7] This Court has explained that PLC is "an arrangement whereby a juvenile court discontinues intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated." ***In re S.H.***, 71 A.3d 973, 977 (Pa. Super. 2013). Additionally, "[t]he custodian is typically provided a financial subsidy for the child by the local county children and youth agency." ***Id***.

II.     Whether the trial court abused its discretion and committed an error of law when it found that sufficient grounds existed to terminate [Appellant's] parental rights to the Children, and when the trial court failed to primarily consider the Children's developmental, physical, and emotional needs and welfare thus contravening Section 2511(a) and (b) of the Adoption Act?

III.    Whether the trial court erred and abused its discretion by determining that the best interests of the Children would be served by changing their placement goals to adoption where: there is insufficient evidence that a goal change would be in the best interests of the Children; there is insufficient evidence of conduct by [Appellant] that places the health, safety or welfare of the Children at risk; and the trial court failed to account for the parent-child relationship shared between [Appellant] and the Children?

IV.     Whether the trial court abused its discretion and committed an error of law when it found that the Children's placement goals of reunification were neither appropriate, nor feasible, and ordered goal changes to adoption, thus contravening 42 Pa.C.S.A. § 6351(f) of the Juvenile Act?

V.      Whether the trial court erred and abused its discretion in changing the goals for the Children from reunification to adoption when [Appellant] had exhibited compliance with the permanency plan having attended nearly all visits and participated in or completed nearly all recommended services that were available to him and the trial court failed to fully consider the bond between [Appellant] and the Children?

Appellant's Brief at 14-15 (cleaned up and reordered for ease of disposition).[8/9]

We begin by reviewing the involuntary termination decrees. This Court has explained:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

_____

[8] We note with disapproval several issues regarding Appellant's brief. First, despite listing five issues in the statement of questions involved, Appellant divides his argument section into six headings. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). Further, Appellant's brief is replete with typographical errors and meandering, disjointed, or wholly misguided arguments. While we are able to discern the general issues proffered, we caution counsel to provide this Court with a work product befit an appellate court going forward.

[9] We further note with displeasure that the Children's GAL did not participate in this appeal.

*See Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the trial court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Instantly, the orphans' court involuntarily terminated Appellant's parental rights pursuant to Section 2511(a)(5), (8), and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions

which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(5), (8), (b).

This Court has explained that

[i]n order for termination pursuant to 23 Pa.C.S.A. § 2511(a)(5) to be proper, the following factors must be demonstrated: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to the child's removal or placement continue to exist; (3) the parents cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably

- 11 -

available to the parents are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1273-74 (Pa. Super. 2003).

Relatedly, Section 2511(a)(8) includes the following three elements that a petitioner must satisfy:

> (1) that the child has been removed from the care of the parent for at least twelve months; (2) that the conditions which led to the removal or placement of the child still exist; and (3) that termination of parental rights would best serve the needs and welfare of the child. *In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018).

*In re M.E.*, 283 A.3d at 832. Further, we explained that, unlike other subsections, Section 2511(a)(8)

> does not require the court to evaluate a parent's willingness or ability to remedy the conditions that led to the placement of the children. *In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). "[T]he relevant inquiry" regarding the second prong of § 2511(a)(8) "is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). Further, the Adoption Act prohibits the court from considering, as part of the § 2511(a)(8) analysis, "any efforts by the parent to remedy the conditions described [in the petition] which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b).

> Although § 2511(a) generally focuses on the behavior of the parent, the third prong of § 2511(a)(8) specifically "accounts for the needs of the child." *In re C.L.G.*, 956 A.2d 999, 1008-09 (Pa. Super. 2008) (*en banc*). This Court has recognized "that the application of [§ 2511(a)(8)] may seem harsh when the parent has begun to make progress toward resolving the problems that had led to the removal of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

- 12 -

However, by allowing for termination when the conditions that led to removal of a child continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit [eighteen] months, in which to complete the process of either reunification or adoption for a child who has been placed in foster care.

*Id.*

*In re M.E.*, 283 A.3d at 832.

Section 2511(b) mandates that the "primary consideration" for a court in considering an involuntary termination petition be to the child's "developmental, physical and emotional needs and welfare." *In the Interest of K.T.*, 296 A.3d 1085, 1105 (Pa. 2023) (quotation marks omitted); *see also* 23 Pa.C.S.A. § 2511(b). This Court has repeatedly stated that "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.W.U., Jr.*, 33 A.3d 1, 6 (Pa. Super. 2011) (citation omitted). The child's bond with the parent, "plus permanency, stability and all 'intangible' factors may contribute equally to the determination of a child's specific developmental, physical, and emotional needs and welfare, and thus are all of 'primary' importance in the Section 2511(b) analysis." *K.T.*, 296 A.3d at 1109.

In his first issue, Appellant argues that the orphans' court abused its discretion by terminating his parental rights pursuant to Section 2511(a)(5)

and (8). Specifically, Appellant contends that (1) CYS failed to present sufficient competent evidence; and (2) the court applied an incorrect legal standard in assessing his parental fitness.[10] **See** Appellant's Brief at 29-37. Upon review, we are constrained to agree that CYS failed to satisfy its burden of proof with respect to the first element of these subsections, as follows.

The plain language of the first element of both Section 2511(a)(5) and (8) requires the direct removal of a child from a parent's custody. This Court initially examined the relevant statutory language in **In re C.S.**, 761 A.2d 1197 (Pa. Super. 2000) (*en banc*), which was an appeal from a decree involuntarily terminating the father's parental rights to his son pursuant to 23 Pa.C.S.A. § 2511(a)(1), (5), (8), and (b). In that case, the father was incarcerated at the time of his son's birth. When the child was two years old, he was removed from the care of the mother due to her neglect and unsafe home, and he was placed in foster care. The father remained incarcerated at the time of his son's removal. In addition, there was no indication that the

---

[10] Appellant contends that he "must not be measured against the perfect parent, but against a parent, who has PTSD, that has some mental health irregularities and that has made the decision to change their gender." Appellant's Brief at 30. It is already well-established under Pennsylvania law, however, that an orphans' court "must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants the involuntary termination." **Matter of Adoption of Charles E.D.M., II**, 708 A.2d 88, 91 (Pa. 1998). To the extent that Appellant contends that the court failed to consider his individualized circumstances, our review of this case reveals no basis upon which to conclude the court committed legal error.

- 14 -

father had ever lived with his son. The father remained incarcerated on the date of the termination hearing. Based on these facts, the *en banc* panel held that Sections 2511(a)(5) and (8) did not provide a basis for terminating the father's parental rights. The panel explained that the child was never in the father's care and, therefore, "could not have been removed from his care." *C.S.*, 761 A.2d at 1200. Because the trial court in that case also had terminated the father's parental rights pursuant to Section 2511(a)(1), and the panel concluded that there was no abuse of discretion under that subsection, this Court affirmed the decree.

Thereafter, in *In re Z.P.*, 994 A.2d 1108 (Pa. Super. 2010), we reversed an order denying the agency's petition for the involuntary termination of the father's parental rights to his son pursuant to Section 2511(a)(1), (2), (5), (8), and (b). This Court specifically concluded that the trial court abused its discretion in failing to grant the petition pursuant to Section 2511(a)(2) and (b). In reversing the order, however, this Court rejected the agency's argument. Pursuant to *C.S.*, we concluded that the trial court properly determined that termination under Section 2511(a)(5) and (8) was improper because the father was incarcerated at the time that the child was removed from the mother's care and placed in foster care. In addition, like in *C.S.*, the father in *Z.P.* had never provided care for his son prior to the child's placement. We stated:

> [T]he record makes clear that but for the wording of these subsections, the [a]gency presented clear and convincing

evidence to terminate [the f]ather's parental rights under both subsections 2511(a)(5) and (a)(8).  Z.P. has been in foster care for more than twelve months, and the conditions which led to his placement continue to exist.  The evidence shows [the f]ather does not have the capacity to undertake his parental role at this time.  We note, however, the similarity of the present case to ***In re C.S.,*** regarding the child's removal from [the f]ather's care.  We agree with the trial court, therefore, that termination is not proper under subsections (a)(5) and (a)(8).  The wording of the statute actually creates a perverse protection to parents who have failed to undertake any custodial responsibilities.

***Z.P.***, 994 A.2d at 31 n.2.

More recently, in ***In the Interest of P.N.M.***, 264 A.3d 383 (Pa. Super. 2021) (unpublished memorandum), this Court concluded that ***C.S.*** was controlling where the agency pursued involuntary termination of the mother's parental rights, who was the noncustodial, but not incarcerated, parent at the time of her children's removal and placement in foster care.[11]  In that case, the father had assumed sole custody of the children at some point prior to the agency's involvement.  The children were adjudicated dependent while in the father's custody, and, three months later, the court removed the children from the father's care because he had failed to comply with court orders relevant to the children's well-being.  Ultimately, the trial court entered decrees involuntarily terminating the mother's parental rights pursuant to Section 2511(a)(1), (2), (5), (8), and (b).  However, we affirmed the decrees only as to Section 2511(a)(2) and (b).  With respect to Section 2511(a)(5) and (8),

_____

[11] ***See*** Pa.R.A.P. 126(b)(1)-(2) (providing that unpublished memoranda filed after May 1, 2019, may be cited as persuasive precedent).

we concluded, pursuant to **C.S.**, that termination of the mother's parental rights was improper because, based on the foregoing facts, the children had not been removed from her care.

Likewise, in **In re Adoption of A.A.S.**, 1516 WDA 2024, 2025 WL 3229404 (Pa. Super. filed November 19, 2025) (unpublished mem.), this Court reversed the decree involuntarily terminating the father's parental rights to his son pursuant to Section 2511(a)(5) and (b), after concluding that the court abused its discretion because the child had been removed from the mother's care at the time of birth, when the father's whereabouts were unknown. We further noted that the father was subsequently located, and his paternity established, after which the court included him in his son's permanency planning. We held that, although the court made the father part of the permanency review orders in the underlying matter, those orders "do not constitute a removal of" the child from the father's care by the court. **Id.** at *7 n. 13; **see also Interest of S.B.**, 341 A.3d 90 (Pa. Super. 2025) (unpublished memorandum) (determining that termination of the father's parental rights to his four children was improper under Section 2511(a)(5) and (8) because the children were removed from the mother's care); **In re Adoption of M.B.**, 335 A.3d 327 (Pa. Super. 2025) (unpublished memorandum) (concluding that because the children were not in the mother's care at the time of their removal, the first element of Section 2511(a)(5) and (8) cannot be established).

Based upon the foregoing, we are constrained to conclude, pursuant to *In re C.S.*, *supra*, that the orphans' court in this case erred and abused its discretion by terminating Appellant's parental rights to the Children pursuant to Section 2511(a)(5) and (8). There is no dispute that the court removed the Children from the care of their maternal grandmother, who had been exercising primary physical and shared legal custody of them, and placed them in foster care. At the time of their removal, Appellant was residing in the State of Maine, where he had relocated five years earlier. *See* N.T., 5/6/25, at 97. Despite having shared legal custody, there is no indication in the record that Appellant had exercised legal custody of the Children during this five-year time period. Likewise, there is no indication in the record that Appellant exercised physical custody of the Children during this time. Indeed, Appellant last had physical custody of the Children when they were one and one-half years and four months old, and, at the time of their removal from their grandmother's care, they were eleven and nine years old, respectively. *See id.* at 96. Therefore, we hold that CYS failed to present clear and convincing evidence with respect to the first element of both Section

2511(a)(5) and (8). ***See In re C.S.***, ***supra***. Accordingly, we reverse the involuntary termination decrees.[12, 13]

We next turn to the orders changing the Children's permanency placement goals to adoption with concurrent goals of PLC. Our standard of review is likewise an abuse of discretion. ***See In the Interest of J.B.***, 296 A.3d 1234, 1238 (Pa. Super. 2023) (citation omitted).

Section 6351 of the Juvenile Act governs the considerations relevant to a permanency review hearing, as follows.

> **(f) Matters to be determined at permanency hearing**. At each permanency hearing, a court shall determine all of the following:
>
> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

---

[12] As set forth above, CYS only pursued termination of Appellant's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(5), (8), and (b). Based upon our review of the record, CYS likely would have succeeded had it pursued termination under Section 2511(a)(1) or (2). We reiterate that we need only agree with a court's determination as to **one** subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. ***See M.E.***, 283 A.3d at 830.

[13] Based upon this disposition, we need not consider Appellant's second issue which involves Section 2511(b). ***See T.S.M.***, 71 A.3d at 267; ***see also*** 23 Pa.C.S.A. § 2511(b).

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

(7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

. . .

42 Pa.C.S.A. § 6351(f)(1)-(7), (9).

We have explained:

The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. [**See** 42 Pa.C.S.A. § 6351(f)]. "Safety, permanency, and well-being of the child must take precedence over **all** other considerations." **In re N.C.,** [909 A.2d 818,] 823 [(Pa. Super. 2006)]. Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. **Id.** "These statutory mandates clearly place the trial court's focus on the best interests of the child." **In re A.K.**, [906 A.2d 596,] 599 [(Pa. Super. 2006)].

When parents have cooperated with the agency, achieved the goals of their permanency plans, and alleviated the circumstances that necessitated the child's original placement, the agency should continue to put forth efforts to reunite the child with her parents. **In re A.K., supra.** However, "when the child welfare agency has made reasonable efforts to return a foster child to . . . her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." **In re N.C., supra** at 823.

**In re S.B.**, 943 A.2d 973, 978 (Pa. Super. 2008); **see also In the Interest of L.T.**, 158 A.3d 1266, 1276 (Pa. Super. 2017) (reiterating, "a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citations omitted).

Appellant's brief is not a model of clarity and largely contains meandering, unsupported arguments. Notwithstanding, we distill his arguments and review his third, fourth, and fifth issues together since they are interrelated. The crux of Appellant's argument is that CYS failed to present sufficient evidence that changing the Children's permanency placement goals

was in their best interest.[14]   **See** Appellant's Brief at 20-29.   Specifically, Appellant argues that he "attended nearly all visits and participated in or completed nearly all recommended services. . . ." **Id.** at 29.

Further, Appellant contends that CYS did not maintain reasonable efforts to facilitate reunification.  **See id.** at 23-25.  Specifically, he asserts that CYS stalled in obtaining releases from Dr. Klein and did not pre-approve payment for a drug and alcohol assessment.  **See id.** at 24.   He also argues that the Children's placements are not appropriate as the Children continue to display "intolerable behaviors." **Id.** at 27.  Finally, Appellant baldly contends that the court erred pursuant to Section 6351(f)(5) when it failed to proffer a specific date by which the Children's placement goal might be achieved in all six permanency orders entered in the underlying matter.  **See id.** at 26.

In this case, the orphans' court provided a comprehensive Rule 1925(a) opinion with respect to its orders changing the Children's permanency goals to adoption.  **See** T.C.O., 6/26/25, at 1-15.  The court made the relevant considerations as mandated by Section 6351 and determined that it was in the best interests of the Children to change their permanency placement goals.  The orphans' court proffered the following findings, in relevant part:

**(1) The continuing necessity for and appropriateness of the placement**

---

[14] To the extent that Appellant refers to cases related to involuntary termination proceedings, we do not consider them.  **See** Appellant's Brief at 28-29.

The placements of G.S., [Jr.] and D.F. are appropriate. At the time of the hearing, G.S., [Jr.] was placed with KidsPeace and was awaiting discharge to the resource home of [M.B.] [Ms. Bryant] testified that the meet-and-greet between G.S., [Jr.] and [M.B.] went very well. Ms. Bryant also testified that the current and proposed placements were appropriate and safe for G.S., [Jr.] D.F. is currently placed in the foster home of [J.E.] and [D.B.] Ms. Bryant testified that the placement is going very well. Ms. Bryant testified that D.F. is bonded with the family and that the placement is appropriate and safe for her.

The [C]hildren's current placements are also necessary. As [Ms.] Bryant testified, the [C]hildren have not been in [Appellant's] custody since they were babies. Ms. Bryant also testified that even during supervised visits, there are still concerns that approximately eighty to eighty-five percent of the visits need to be redirected for positive reinforcement and for when conversation topics get inappropriate. [Appellant] also continues to struggle with effective communication and picking up on the [C]hildren's cues. Ms. Bryant testified as to [CYS's] concern about [Appellant] being very selfish about how he handles the [C]hildren and not understanding their needs and disabilities. Ms. Bryant testified that she has not seen a change in this since the beginning of the [C]hildren's dependency, and she describes the bond between [Appellant] and the [C]hildren as more of a sibling bond rather than a parent-child bond.

**(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.**

[CYS] has been involved with [the Children] for a number of years.

. . .

Ms. Bryant testified that [Appellant] only attended two (2) visits in-person. The rest were conducted over Zoom. Ms. Bryant also testified that the [visits are supervised.]

The visit supervisor, [Ms.] Felczuk, testified that she must prompt the conversation eighty to eight-five percent of the sessions. Ms. Felczuk has been working with [Appellant and the [C]hildren since December 9, 2024. Ms. Felczuk testified that, in the time she has been working with [Appellant,] she has never seen a time where

[Appellant] has displayed appropriate parenting with the [C]hildren. . . .

**(3) The extent of progress made toward alleviating the circumstances necessitate[ing] the original placement.**

With regard to [Appellant's] progress toward alleviating the circumstances of the placement, [the court consistently found his progress to be minimal.] While [Appellant] has maintained regular communication via telephone and email with [CYS], has submitted to drug requests as request[ed] by [CYS], and has completed a parent[al] fitness evaluation, Ms. Bryant testified [she has not seen any improvement in Appellant's parenting.]

**(4) The appropriateness and feasibility of the current placement goal for the child.**

. . . . The [C]hildren's lives cannot be subject to an endless "wait and see approach" contingent on [Appellant] complying with the goals set for him by [CYS]. The [c]ourt agreed that the prior placement goal of reunification or return to parent or guardian was neither appropriate nor feasible, and that a goal change was necessary.

. . .

**(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.**

[CYS] has made reasonable efforts to finalize the permanency plan in effect. [CYS] provided numerous services in an effort to finalize the permanency plan for [the Children] . . . .

**(6) Whether the child is safe.**

Pursuant to Ms. Bryant's testimony, [the Children] are safe in their current placement settings.

T.C.O., 6/26/25, at 4-8.[15]

The record supports the court's findings, as follows. In December 2024, CYS contracted with Justice Works to provide coaching for Appellant during his weekly supervised visitation, which he participated in via videoconferencing. *See* N.T., 5/6/25, at 17, 45. Despite this, Ms. Bryant, CYS assistant director, testified that there are "still concerns that approximately [80 to 85] percent of the visits need to be redirected for positive reinforcement and when topics get inappropriate." *Id.* at 17.

She further stated that "there [are] struggles with inappropriate topics and overall, we are not seeing any improvement in parenting. We're still at base line where we were with [Appellant] back when we started supervised visits." *Id.* Specifically, Ms. Bryant testified that Appellant is unable to identify when the Children are upset or when the topic he is discussing "derails" them. *Id.* at 17-18, 28-29. For example, Ms. Felczuk, Justice Works visit coach, referred to an incident wherein it was "obvious" that a "teary eyed" G.S., Jr., was upset and Appellant merely ignored him and persisted with his plan for the visit. *Id.* at 53.

_____

[15] Appellant also appears to argue that the court did not appropriately consider Section 6351(7) which refers to children placed "outside the Commonwealth." *See* Appellant's Brief at 21-22; 42 Pa.C.S.A. § 6351(f)(7). The Children have been placed within the Commonwealth, and therefore Section 6351(f)(7) is inapplicable, as aptly stated by the orphans' court. *See* T.C.O., 6/26/25, at 9.

Ms. Felczuk reiterated that Appellant "requires a great deal of assistance in the visits." *Id.* at 49. She testified that she "prompts the conversation [80 to 85] percent of the sessions." *Id.* at 50. She further stated that she has never seen Appellant display appropriate parenting with the Children. *See id.* at 52. Specifically, she testified that Appellant is unable to identify the Children's emotions, he does not put the Children's needs first, and he continues to discuss inappropriate topics, such as conversations regarding "sexual predators." *See id.* at 47, 49, 52, 54, 58. Despite frequent reminders and redirection, Ms. Felczuk testified that Appellant attempts to talk to the Children about "sexual predators" every visit. *Id.*

Ms. Felczuk also testified that she emphasized to Appellant the need for him to visit with the Children in person. *See id.* at 59, 75. Ms. Felczuk testified that CYS would pay for travel expenses. *See id.* at 75. However, Appellant stated to Ms. Felczuk that more frequent in-person visitation was "impossible." *Id.* Overall, Appellant was unable to demonstrate appropriate care for the Children even during supervised, videoconference visitation.

Further, the Children are autistic and initially displayed behavioral problems. *See id.* at 19-20. However, Ms. Bryant reported that the Children are receiving counseling and are now doing well in their respective placements. *See id.* at 19-21, 32-33.

To the extent that Appellant contends that CYS failed to advance reasonable efforts, the juvenile court consistently determined at the

- 26 -

permanency review hearings that CYS had provided "reasonable efforts." *See generally* Permanency Review Orders; *see also* T.C.O., 6/26/25, at 8. Further, while Appellant claims that CYS failed to provide pre-approval payment for a drug and alcohol evaluation, there is no indication that the court considered this against Appellant. Indeed, Ms. Bryant testified that Appellant's failure to complete the drug and alcohol evaluation did not concern CYS. *See* N.T., 5/6/25, at 43.

Finally, to the extent Appellant is asking us to examine the prior permanency review orders, his claim fails since those orders are not before us on appeal.[16] With respect to the subject goal change orders, they indicate under Section 6351(f)(5) that the likely date by which the Children's placement goals might be achieved is six months. As such, Appellant's contention is without merit.

Based upon the foregoing, the certified record amply supports the court's findings, and its determination is reasonable that changing the Children's permanency placement goals from reunification to adoption serves their best interests. Accordingly, we discern no abuse of discretion.

_____

[16] We note that, with respect to Section 6351(f)(5), the prior permanency orders set forth "unknown" or "undetermined" concerning when the Children's permanency goals will be achieved. Appellant fails to provide any legal support, and we are not aware of any, for his contention that these findings are insufficient under this provision of the Juvenile Act.

Decrees reversed. Case remanded. Goal change orders affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2026